IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

LION OIL COMPANY                                                                                         PLAINTIFF

vs.                                          Civil No. 13-CV-1071

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, *et al.*                                                      DEFENDANTS

## ORDER

Before the Court is Defendants' Motion *In Limine* to Exclude the Testimony of Kevin O'Toole, William Byrd, and Dr. Ashok Saxena on any Previously Undisclosed Opinions. ECF No. 93. Plaintiff has responded. ECF No. 112. The Court finds the matter ripe for consideration.

Federal Rule of Civil Procedure 26(a) requires disclosure of all opinions in an expert report, and undisclosed opinions are excluded at trial under Federal Rule of Civil Procedure 37(c)(1). Defendants move the Court to preclude three of Plaintiff's experts from either directly contradicting their prior opinions at trial or testifying to opinions not disclosed in their Rule 26(a) reports.

**A. Kevin O'Toole**

Plaintiff offers Kevin O'Toole as an expert in forensic accounting and financial loss modeling. Defendants argue that Kevin O'Toole should be precluded from offering testimony that contradicts his expert opinion. Alternatively, Defendants argue that O'Toole cannot testify that he allocated between contingent business interruption expenses and extra expenses/expenses to reduce loss ("EE/ETRL") because his testimony is unreliable under *Daubert*.

### 1. Previously Undisclosed Opinions

In 2011, Tom Schneider of Stancil & Company prepared a business interruption measurement for Plaintiff. The Stancil Business Interruption Model ("Stancil Model") was used to calculate net margin earnings before interest, tax, depreciation, and amortization that would have been earned had the North Line pipeline been in operation. The Stancil Model did not account for extra expenses and expenses to reduce loss ("EE/ETRL"), two elements of damages claimed by Plaintiff under the policies at issue.

In support of Plaintiff's claims, Kevin O'Toole provided a report in which he considered the Stancil Model as source material to determine his calculation of Plaintiff's damages. O'Toole categorized Plaintiff's expenses as either contingent business interruption expenses or EE/ETRL expenses. He accepted the calculations of the Stancil Model and used these calculations to help determine the amount of EE/ETRL expenses.

Defendants argue that O'Toole should not be permitted to testify that he allocated between contingent business interruption expenses and EE/ETRL because it directly contradicts his expert opinions. According to Defendants, O'Toole simply accepted as given the figures calculated under the Stancil Model and then grouped everything else within EE/ETRLwithout performing an analytical or accounting function in deciphering expenses for the categories. Further, Defendants assert that O'Toole should be precluded from offering testimony that relied on any particular interpretation of the policies or distinguished between the EE and ETRL categories.

Plaintiff argues that O'Toole's report clearly differentiates between contingent business interruption expenses and EE/ETRL. In his report, O'Toole discusses the basis for his contingent business expenses calculation and separately describes and calculates EE/ETRL. Plaintiff also

argues that there is no evidence that O'Toole intends to testify as to policy interpretation or that he distinguished between the EE and ETRL categories in his report.

Having considered the arguments raised in the parties' briefs, the Court agrees with Plaintiff and finds that Defendants' motion as to previously undisclosed opinions by O'Toole should be denied. O'Toole's report differentiates between contingent business interruption expenses and EE/ETRL expenses. He explains in his report that he relied on the figures calculated by the Stancil Model for contingent business interruption expenses. The Court is not convinced that O'Toole's anticipated testimony regarding how or whether he allocated between contingent business interruption expenses and EE/ETRL is contradictory to any previous opinion. Further, there is no evidence that O'Toole intends to testify as to policy interpretation or testify that he distinguished between the EE and ETRL categories in his report. To the extent O'Toole does testify as to these two issues, Defendants can object to the testimony at trial.

### 2. *Daubert* Challenge

The starting point for analyzing expert testimony is Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods, and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993), the Court is to perform a "gatekeeping" function and insure that proffered expert testimony is both relevant and reliable. *See Penney v. Praxair, Inc.*, 116 F.3d 330, 333 (8th Cir. 1997). The proponent

of the expert testimony has the burden of establishing by a preponderance of the evidence that the expert is qualified, that his methodology is scientifically valid, and that "the reasoning or methodology in question is applied properly to the facts in issue." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757-58 (8th Cir. 2006).

In *Daubert*, the Supreme Court outlined particular factors for courts to consider in assessing reliability: (1) whether the opinion is based on scientific knowledge, is susceptible to testing, and has been tested; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology; and (4) whether the theory has been generally accepted by the scientific community. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149-150 (1999) (summarizing Daubert factors). The test of reliability, however, is "flexible, and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts in every case." *Id*. at 141-42. The inquiry as to the reliability and relevance of the testimony is "designed to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Marmo*, 454 F.3d at 757 (quoting *Kumho*, 526 U.S. at 152).

"Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." *Id.* at 757 (citing *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir. 2000)). "Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Id.* at 758. "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be

excluded." *Bonner v. ISP Techs, Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001) (quoting *Hose v. Chi. Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1996)).

Here, Defendants move to exclude O'Toole from testifying how he allocated between contingent business interruption expenses and EE/ETRL expenses because he did not utilize any methodology in arriving at his calculations. In support of their argument, Defendants rely on one general statement by O'Toole in his deposition that he used the Stancil Model as a baseline for contingent business interruption expenses and then grouped everything else into the EE/ETRL category. It is evident from O'Toole's report, however, that O'Toole did perform extensive analysis of Plaintiff's damages.

O'Toole's report is largely based on information he received in the process of preparing Plaintiff's insurance claim. He also developed calculations of Plaintiff's damages based on voluminous source material and his own investigative efforts. In Exhibit C to O'Toole's report, he lays out Plaintiff's loss measurement in 138 detailed pages. O'Toole has provided an expert report that explains his calculations and how he arrived at them. Moreover, there is no evidence that the Stancil Model is unsound. In fact, Defendants' own expert relied on the Stancil Model calculations for his report and then made some adjustments to those calculations.

The Court cannot find that O'Toole's methodology is invalid or unreliable or that his expert opinions are speculative, unsupported by sufficient facts, or contrary to the facts of the case. Defendants will have the opportunity to cross-examine O'Toole and to present their own expert testimony regarding the amount of Plaintiff's contingent business interruption expenses and EE/ETRL. Also, Defendants may attempt to challenge O'Toole's calculations and conclusions by

cross-examining them. Accordingly, the Court agrees with Plaintiff and finds that Defendants' motion as to the *Daubert* challenge to O'Toole should be denied.

### B. William Byrd

Lion Oil offers William Byrd as an expert to explain the regulatory process and explain logistical issues applicable to the restart of a pipeline after a significant failure. ECF No. 73-39, p. 4. The following exchange took place between defense counsel and Byrd during his deposition:

> Q: Ms. Jones told us in her deposition that none of the corrective actions required from the PHMSA[1] related to the actual repair of the ruptured section. Do you agree with that?
>
> A: I haven't thought of it like that so I'm not sure. I would have to go back and look at it to say if I made that as a blanket statement. But I would agree in general terms, without trying to say there is nothing in there that the corrective action order is about future actions. It kind of presumes the repair has been made. I think that's a fair way to characterize it.
>
> ECF No. 95-1.

In its response to Defendants' summary judgment motion, Plaintiff attached an affidavit in which Byrd stated that "the replacement of the physically damaged pipe is not the extent of 'repair' as contemplated by the CAO.[2]" Byrd further stated that "[r]epair of the Pipeline includes the multitude of repairs that may be required as a result of the corrective and follow-up actions mandated by the CAO."

Rule 26(a)(2) of the Federal Rules of Civil Procedure governs the mandatory disclosure of expert testimony. For experts required to submit a report, the rule requires, unless otherwise stipulated or ordered, that the expert report contain, among other things, "a complete statement of

---

[1] "PHMSA" refers to the Pipeline and Hazardous Material Safety Administration.

[2] "CAO" refers to the Corrective Action Order issued by the PHMSA.

all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(I).  Each party has an obligation to supplement information included in an expert's report "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e).  Untimely disclosure of an expert opinion triggers Rule 37(c)(1) sanctions, including the exclusion at trial of testimony on undisclosed opinions, unless the "failure was substantially justified or is harmless." Fed. R. Civ. 37(c)(1).

Defendants contend that Byrd should not be permitted to testify that the hydrostatic testing of the pipeline was part of the repair period for the ruptured pipe because he did not disclose this opinion in his expert report. In his report, Byrd explains that hydrostatic testing of the pipeline and numerous other corrective actions were required by the PHMSA in order to restart the pipeline. Byrd, however, does not disclose his opinion that the repair period for the ruptured pipe encompassed all of these actions.

Plaintiff never supplemented Byrd's report with the new opinion.  Instead, the new and untimely opinion was disclosed in the form of an affidavit attached to Plaintiff's response to Defendants' summary judgment motion.  Plaintiff has provided no explanation for its failure to timely disclose this opinion, so the Court cannot find that it was justified or harmless. *See* Fed. R. Civ. P. 37(c)(1).  Thus, the Court finds that Defendants' motion regarding Byrd's undisclosed opinion should be granted.  Byrd is precluded from testifying that the hydrostatic testing of the pipeline was part of the repair period for the ruptured pipe.

### C. Dr. Ashok Saxena

Defendants move to prevent Dr. Ashok Saxena from proffering certain expert testimony regarding the faulty workmanship exclusion of the policies at issue.  After Defendants filed the

present motion, the Court ruled that the faulty workmanship exclusion does not apply in this case. In light of this ruling, Plaintiffs will not be calling Dr. Saxena to testify at this trial. Thus, there is no need for the Court to render a ruling on Defendants' motion as it relates to Dr. Saxena.

For the reasons discussed above, the Court finds that Defendants' motion as it relates to Kevin O'Toole is **DENIED**. Further, the Court finds that the motion as it relates to William Byrd is **GRANTED**.

IT IS SO ORDERED, this 20th day of October, 2015.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge