IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

LION OIL COMPANY                                                                                    PLAINTIFF

vs.                                        Civil No. 13-CV-1071

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, *et al.*                                                DEFENDANTS

### ORDER

The trial of this matter began on October 26, 2015.  On October 30, 2015, outside of the presence of the jury, both parties orally moved for judgment as a matter of law on the same two issues: the applicability of the insurance policies' service interruption provision and whether "stacking" of coverages is allowed under the policies.[1]  The parties provided the Court with trial briefs regarding these issues, ECF Nos. 193 and 204, and the Court heard arguments from the parties regarding the motions for judgment as a matter of law.  These motions are now ripe for the Court's consideration.

Judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).  "A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2).  Here, the parties agree that their motions present legal issues that should be resolved by the Court.

---

[1] Defendants provided insurance to Plaintiff pursuant to certain all-risk policies.  The policies are not identical, but the parties agree that the relevant coverage terms are the same.

The parties agree that interpretation of the insurance policies in this diversity case is governed by Arkansas substantive law. *See Allstate Indem. Co. v. Rice* , 755 F.3d 621, 623 (8th Cir. 2014). ("'Interpretation of an insurance policy' is a 'matter [] of state law.'") (quoting *Allstate Ins. Co. v. Blount*, 491 F.3d 903, 908 (8th Cir. 2007)). In Arkansas, "the language in an insurance policy is to be construed in its plan, ordinary, and popular sense." *Adams v. Cameron Mut. Ins. Co.*, 430 S.W.3d 675, 677 (Ark. 2013). If the language is unambiguous, its construction and legal effect are questions of law for the court to decide, *Tri-Eagle Enter. v. Regions Bank*, 373 S.W.3d 399, 403 (Ark. Ct. App. 2010), and the court will give effect to the plain language of the policy without resorting to the rules of construction. *Corn v. Farmers Ins. Co.*, 430 S.W.3d 655, 660 (Ark. 2013); *Elam v. First Unum Life Ins. Co.*, 57 S.W.3d 165, 169 (Ark. 2001). "However, when ambiguous language is used in the contract, other rules apply." *Tri-Eagle*, 373 S.W.3d at 403.

"Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation." *Id*. The determination whether an ambiguity exists is ordinarily a question of law for the court to resolve. *Id*. Where the issue of ambiguity may be resolved by reviewing the contract language itself, the court will interpret the contract as a matter of law. *Id.*; *Source Logistics, Inc. v. Certain Underwriters at Lloyd's of London*, 374 S.W.3d 232, 239 (Ark. Ct. App. 2010). Where the parties, however, go beyond the contract and submit disputed extrinsic evidence to support their proffered definitions of the term, the issue is a question of fact for the jury. *Tri-Eagle*, 373 S.W.3d at 403-404.

A. <u>Service Interruption Provision</u>

The policies at issue here include multiple time element extensions. One such extension relates to Service Interruption, which states:

    (5)    Time Element Extensions

        (a)    This policy, subject to all provisions and without increasing the limits of this policy, also insures against loss resulting from damage to or destruction by causes of loss insured against, to:

            (i)    Service Interruption: electrical, steam, gas, water, sewer, incoming or outgoing voice, data, or video, or any other utility or service, transmission lines and related plants, substations and equipment situated on or outside of the premises;

. . . .

ECF No. 1-2, p. 17. Both parties argue that the service interruption provision is unambiguous and that the Court should give effect to the plain language of the policy. Plaintiff argues that the ordinary meaning of the terms in the service interruption provision require coverage. Defendants, however, argue that the application of two certain rules of construction lead to only one reasonable interpretation of the service interruption provision—that is, by its plain language, the provision does not apply to a crude oil pipeline.

    Both parties agree that, to trigger the service interruption coverage, the property damaged must be "transmission lines and related plants, substations and equipment situated on or outside of the premises" that carry "electrical, steam, gas, water, sewer, incoming or outgoing voice, data, or video, or any other utility or service" to Plaintiff's refinery. None of the terms found in the service interruption provision are defined within the policies. Plaintiff argues that the ordinary meaning of the term "transmission line" includes a crude oil pipeline and that the ordinary meaning of the term "service" includes the delivery of oil. Thus, according to Plaintiff, applying the plain and ordinary meaning of the policies' terms leaves little doubt that the Northline rupture triggered the service interruption provision because its losses resulted from the interruption of EMPCo's crude oil

delivery service via the transmission line. Defendants, on the other hand, argue that the plain meaning of "transmission line" does not include a crude oil pipeline and that the phrase "any other utility or service" does not include the delivery of oil.

A crude oil pipeline transmits oil from one place to another. Thus, the plain and ordinary meaning of "transmission line" includes a crude oil pipeline. The plain and ordinary meaning of "service," however, is much more complex. The term "service" includes several definitions. "Service" can be defined as "useful labor that does not provide a tangible commodity," which supports Plaintiff's interpretation of the service interruption provision. MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1070 (10th ed. 1998). "Service" can also be defined as "a facility supplying some public demand," which support Defendant's interpretation. *Id.* Because the term "service" is susceptible to more than one reasonable interpretation, the Court finds that the service interruption provision's language is ambiguous.[2]

Defendants urge the Court to apply two rules of construction that would narrow the meaning of the phrase "any other utility or service." The *noscitur a sociis* doctrine provides that a word may be defined by an accompanying word. *Farmers Ins. Exchange v. Bradford*, 460 S.W.3d 810, 813 (Ark. 2015). Within this broad doctrine, the rule of *ejusdem generis* provides that when general words follow an enumeration of particular things, the general words are constructed to embrace only objects similar in nature to those objects enumerated by the preceding specific words. *Edwards v. Campbell*, 370 S.W.3d 250, 253 (Ark. 2010). Defendants assert that, applying these two rules of

---

[2] Pursuant to Federal Rule of Evidence 201, Plaintiff moves the Court to take judicial notice of certain definitions of terms that are found in the service interruption provision but not defined by the policies at issue. ECF No. 200. Specifically, these terms are "service," "transmit," "line," "transmission line," and "trunk line." ECF No. 200. There is a reasonable dispute as to the proper authority for defining and interpreting these terms. Thus, Plaintiff's motion is denied.

construction, the only reasonable interpretation of the service interruption provision is that it does not refer to just any type of transmission lines, plants, substations or equipment. Instead, the provision refers to only transmission lines that provide services similar to the services enumerated earlier in the same sentence (i.e., electrical, steam, gas, water, sewer, incoming or outgoing voice, data, or video, or any other utility or service). Defendants argue that the enumerated terms describe services used to run the operation of the refinery and that crude oil service is not in this same category.

  Contrary to Defendant's suggestion, these two rules of construction are not applied at the outset to aid the Court in determining whether an ambiguity exits. These rules are only applied when construing ambiguous terms. *See Bradford*, 460 S.W.3d at 813-814 (applying the *noscitur a sociis* rule of construction after finding that the motor-vehicle definition in the insurance policy was ambiguous); *McKinney v. Robbins*, 892 S.W.2d 502, 503 (Ark. 1995) ("In construing an ambiguous statute, we have turned in the past to the doctrine of *ejusdem generis*."). Here, because the Court has determined that an ambiguity exists, the use of these rules is appealing and presents a reasonable interpretation of the policy. However, because this is an insurance case, the Court is required to apply the interpretation that favors the insured, which is Plaintiff in this case. *See Bradford*, 460 S.W.3d at 813-14; *Philadelphia Indem. Ins. Co. v. Austin*, 383 S.W.3d 815, 823 (Ark. 2011) ("We repeatedly have stated that if the language of a policy is susceptible to two interpretations—one favorable to the insured and one favorable to the insurer—then the interpretation most favorable to the insured must be adopted."). Accordingly, the Court determines that the terms "transmission lines" and "service" as used in the policies include a crude oil pipeline and the delivery of oil. Thus,

the service interruption provision covers losses resulting from the interruption of EMPCo's crude oil delivery service to Plaintiff's refinery via the Northline pipeline.

### B. "Stacking" Coverages

In addition to the time element extension that covers service interruption, the policies at issue provide an extension that covers contingent business interruption. The issue before the Court is whether these insurance policies, which provide service interruption coverage of $25 million and contingent business interruption coverage of $25 million, provide an aggregate coverage of $50 million or a coverage limited solely to $25 million. In other words, the dispute is whether Plaintiff may recover under both the service interruption and contingent business interruption coverages. Courts sometimes refer to this practice as "stacking." *See Whitney v. Shelter Mut. Ins.*, 383 F. Supp. 2d 1112, 1114 (W.D. Ark. 2004).

"In Arkansas, stacking is not prohibited by statute and may be precluded by an applicable anti-stacking clause." *Ross v. United Services Auto. Ass'n*, 899 S.W.2d 53, 55 (Ark. 1995). When interpreting anti-stacking provisions, Arkansas courts have held that anti-stacking provisions that only prohibit the stacking of separate policies do not prohibit the stacking of coverages within a single policy. *See Argonaut Great Ins Co. v. Casey*, 2011 WL 6130916, at *4 (E.D. Ark. Dec. 8, 2011); *Philadelphia Indem. Ins. Co. v. Austin*, 383 S.W.3d 815, 823 (Ark. 2011) (holding that the anti-stacking provision only applied to multiple-policy situations and not to coverages found within the same policy).

The policies at issue here do not contain an anti-stacking provision. There is no language that restricts the number of coverage grants or sub-limits that apply to a given occurrence. Defendants argue that the amount of recovery under the policy is limited to $25 million because

stacking the contingent business interruption coverage and the service interruption coverage would allow a double recovery for the same damages. Plaintiff, however, suffered a net margin loss that is more than $50 million. ECF No. 198-1. Thus, stacking the two coverages would not allow double recovery because Plaintiff is not seeking to recover an amount that is greater than its actual loss.

The Court is not aware of any case in Arkansas or another state that addresses the propriety of stacking coverages in an all-risk insurance policy. The Arkansas cases that address the practice of stacking insurance coverages deal exclusively with underinsured motorist coverage. *See, e.g., Ross*, 899 S.W.2d at 55. While this does cause the Court some concern, there is no case or statute in Arkansas that would prevent Plaintiff from stacking coverages in an all-risk policy. Defendants could have prevented the stacking of coverages by including an anti-stacking provision in the policies. As a general rule, a claimant may recover under all available coverages provided that there is no double recovery. *Audobon Internal Med. Group, Inc. v. Zurich Am. Ins. Co.*, 2008 WL 2718928, at *2 (E.D. La. July 10, 2008); *Wellmeyer v. Allstate Ins. Co.*, 2007 WL 1235042, at *3, n.2 (E.D. La. April 26, 2007). For these reasons, the Court finds that the service interruption coverage and contingent business interruption coverage in the policies at issue can be "stacked" to provide an aggregate coverage of $50 million.[3]

For the reasons stated above, Defendants' motions for judgment as a matter of law regarding service interruption coverage and "stacking" are **DENIED**, and Plaintiff's motions regarding these two issues are **GRANTED**.

IT IS SO ORDERED, this 2d day of November, 2015.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

---

[3] The policies provide a $700 million limit of liability applicable to all loss suffered per occurrence.