IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

LION OIL COMPANY                                                                                       PLAINTIFF

v.                                          Case No. 1:13-cv-01071

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, *et al.*                                                      DEFENDANTS

**ORDER**

Before the Court are cross motions for Judgment as a Matter of Law Regarding the Applicability of Contingent Extra Expense Coverage. The Court has reviewed the parties' trial briefs (ECF Nos. 191 & 205), and it has considered the arguments presented during a hearing held on October 30, 2015. The Court finds this mater ripe for its consideration.

Judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). "A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). Here, the parties agree that their motions present legal issues that should be resolved by the Court.

In the parties' briefs, they argue whether the Policy provides Contingent Extra Expense ("CEE") coverage, whether the CEE losses are interchangeable with Extra Expenses to Reduce Loss, and whether a sub-limit should apply if the Court finds CEE coverage. Since filing their briefs, the parties have agreed that CEE is not interchangeable with Extra Expenses to Reduce Loss and that the sub-limit issue is no longer relevant in light of the parties' stipulation that Extra Expense damages total $11,340,675. Accordingly, the only question before the Court is whether the contract between Defendant Insurers and Plaintiff Lion Oil provides CEE coverage.

Defendants assert that the absence of CEE coverage in the Policy beyond the definition of

"Time Element" demonstrates that the parties did not intend to include the coverage. The bargained-for contingent coverage, they argue, was only Contingent Business Interruption ("CBI"). Defendants also assert that reading the Policy to provide CEE coverage would lead to the absurd result of providing $700 million of coverage for CEE when the Direct Extra Expense coverage is limited to $15 million.

Plaintiff asserts that merely a lack of a definition for CEE coverage does not mean there is no CEE coverage since the parties do not dispute that there is CBI coverage, which is also not defined in the Policy. They assert that the Contingent Time Element coverage extension includes both CEE and CBI coverage.

"In Arkansas, contracts of insurance are construed according to general contract principles." *American Cas. Co. of Reading, Pa. v. Federal S. & L.*, 704 F.Supp. 898, 900 (E.D. Ark. 1989) (internal citation omitted). When contracting parties express their intention in a written instrument in unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. *Fryer v. Boyett*, 978 S.W.2d 304 (Ark. Ct. App. 1998). However, when the meaning of the language depends upon disputed extrinsic evidence, the question is one for the jury. *Zulpo v. Farm Bureau Mut. Ins. Co.*, 255 S.W.3d 494 (Ark. Ct. App. 2007). The question of whether an insurance policy is ambiguous is a legal one. *Id.*

When construing a contract, it is best to view it "as the mass of mankind would view it, as it may be safely assumed that such was the aspect in which the parties themselves viewed it." *Alexander v. McEwen*, 239 S.W.3d 519, 522 (Ark. 2006) (internal citations omitted). The "intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement." *Id.*; *see also Cont'l Cas. Co. v. Davidson*, 463 S.W.2d 652, 655 (Ark. 1971). The Court must interpret the policy so that "all of its parts harmonize" if possible. *Cont'l Cas. Co.*, 463 S.W.2d at 655. Construction that neutralizes any provision of a contract should never be adopted if the contract can

be construed to give effect to all provisions. *Id.*

Finally, a party may not present an unreasonable interpretation in order to create an ambiguity. *Thacker v. Arkansas Blue Cross & Blue Shield*, 761 F. Supp. 654, 656 (W.D. Ark. 1991), citing *In re Olson*, 916 F.2d 481 (8th Cir. 1990). Contracts should be interpreted to avoid absurdity. *Id.*

In this case, the Policy specifically provides for certain coverages. The "Time Element" coverages include Business Interruption; Extra Expense; Rental Value; and Royalties. The Policy also provides coverage for "Time Element Extensions," which includes Service Interruption, Contingent Time Element, Impounded Water, Interruption by Civil or Military Authority, Ingress/Egress, Research and Development, and Authorities Clause.

The Policy's specific language as it relates to the Contingent Time Element coverage extension reads as follows:

> (5) Time Element Extensions
> (a) This policy, subject to all provisions and without increasing the limits of this policy, also insures against loss resulting from damage to or destruction by causes of loss insured against, to:
>
> . . .
>
> > (ii) Contingent Time Element: property that wholly or partially prevents any direct supplier of goods and/or services to the Insured from rendering their goods and/or services, or property that wholly or partially prevents any direct receiver of goods and/or services from the Insured from accepting the Insured's goods and/or services, such supplier or receiver to be located anywhere in the Policy Territory;

(ECF No. 1-2, pg. 17).

The definition of "Time Element" reads as follows:

> H. Time Element
> The term Time Element means any one or all of the following coverages: Business Interruption, Extra Expense, Contingent Business Interruption, Contingent Extra Expense, Rental Value, Royalties, Service Interruption (Time Element), Ingress/Egress, Interruption by Civil or Military Authority, and all other Time Element extensions provided.

(ECF No. 1-2, pg. 49).

The parties agreed to multiple sub-limits, including a sub-limit of $5 million for CBI-Named, $3.5 million for CBI-Unnamed, and $15 million for Extra Expense coverage. (ECF No. 1-2, pg. 2). The CBI-Named sub-limit was modified to $25 million through a subsequent endorsement. (ECF No. 1-2, pg. 82-83). There is no sub-limit provided for CEE.

The Court finds that a plain reading of the Policy demonstrates that the language is unambiguous, and that the Policy provides coverage for CEE. The Coverages section of the Policy delineates the different coverages the parties intended. Relevant to this discussion, the Policy specifically provides for the Time Element coverages of Business Interruption and Extra Expenses. (ECF No. 1-2, pg. 14-15). These coverages are direct coverages, meaning that they are triggered when there is a loss caused by "loss, damage, or destruction" to Plaintiff's property. The Policy's Time Element coverage is extended by certain Time Element Extensions, including the Contingent Time Element extension. This extension adds contingent coverage which is triggered by a loss "resulting from damage to or destruction by causes of loss insured against, to [third-party property]." (ECF No. 1-2, pg. 17).

The losses insured under the Contingent Time Element coverage extension are not limited to Business Interruption losses, as Defendants would have the Court read the clause. Instead, the Contingent Time Element extension expands Business Interruption and Extra Expense to losses resulting from damage or destruction to third-party property. Because CEE is listed as an available coverage in the Time Element definition,[1] and has not been excluded in any way, the Contingent Time Element extension extends the coverage to protect against those losses. Accordingly, the plain reading

---

[1] The Court agrees with Defendants that the definition of "Time Element" serves as a general list to explain the types of coverages that may be included, if purchased. However, the Court finds that a plain reading of the Policy demonstrates that CEE coverage is, in fact, provided.

4

of the Policy as a whole provides coverage for both CBI and CEE.

Defendants assert that, because CEE coverage is not listed in the Policy outside of the Time Element definition, but CBI coverage is, the parties bargained only for CBI coverage. However, Defendants only point to CBI coverage discussed in reference to a sub-limit and an endorsement, or modification, of that sub-limit. They fail to direct the Court to where CBI coverage is specifically provided for or defined and CEE coverage is not. Before a coverage may be sub-limited, it must be provided. The parties do not dispute that CBI coverage is provided. The CBI coverage was then sub-limited and later extended. The fact that CBI is not specifically enumerated, but is clearly covered since it was later sub-limited, supports the fact that CEE is also covered. CEE is not listed in the Policy again because it was not sub-limited.

Defendants further argue that this interpretation is absurd. However, the Court must first look to the plain language. The Court finds that, here, the plain language of the Policy taken as a whole is susceptible to only one reasonable construction. The Court will not reform the Policy in favor of Defendants when the language is clear and unambiguous.

Because the plain language of the Policy is clear, it is unnecessary for the Court to resort to the use of any extrinsic evidence. Because there are no disputed issues of fact, this question may be resolved without presenting anything to the jury. Accordingly, Plaintiff's Motion for Judgment as a Matter of Law is **GRANTED**. Defendants' Motion for Judgment as a Matter of Law is **DENIED**. The Policy at issue in this case provides coverage for Contingent Extra Expense.

**IT IS SO ORDERED**, this 2nd day of November, 2015.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge